A00A0824. IN THE INTEREST OF R. D., a child.

(532 SE2d 146)

ELDRIDGE, Judge.

The father challenges the September 1999 termination of his parental rights. The Whitfield County Juvenile Court terminated his rights in an order that was both comprehensive and legally correct. After reviewing the record and the trial court's order, this Court finds that there was sufficient clear and convincing evidence to support the termination. Therefore, we affirm.

Viewed in favor of upholding the termination, *In the Interest of A. S. H.*, 239 Ga. App. 565, 568 (521 SE2d 604) (1999), the evidence showed that R. D. was born in 1990 to the father and C. B.[1] In 1991, the Murray County Department of Family & Children Services ("Murray DFCS") investigated allegations that R. D. had been abused; however, the abuser was never identified. Then, in 1993, Murray DFCS removed R. D. on the basis of a deprivation petition filed by his maternal grandparents.

R. D. remained in foster care until he was placed with the father in April 1997, even though the father had recently been expelled from a twenty-eight-day drug treatment program after four days on the suspicion that he was dealing drugs. Then, shortly after the father regained custody of R. D., the father was arrested for stealing two SK-47 assault rifles. He was released on probation.

In April 1998, the father attempted suicide by slashing his wrists while R. D. was sitting with him in his truck. According to the father, he spent two weeks in a psychiatric hospital following the suicide attempt. The Whitfield County Department of Family & Children Services ("Whitfield DFCS") took custody of R. D. based upon the father's suicide attempt, his history of drug use, and his previous criminal convictions. The trial court in this case took judicial notice of the records of the deprivation action which followed. The father did not appeal from the April 24, 1998 order that found R. D. to be deprived.[2]

---

[1] C. B.'s parental rights were also terminated in the same action, but she did not participate in this appeal.

[2] As such, the father is estopped from challenging the finding that the child is deprived

After R. D. was removed from the father's custody, Whitfield DFCS compiled a case plan for reunification. According to the termination hearing testimony, the reunification plan required the father to become and remain emotionally stable; maintain meaningful contact with R. D.; pay $10 per week in child support; maintain stable employment; maintain a safe, stable home; and cooperate with Whitfield DFCS. The father's failure to complete the reunification plan is undisputed. The father claimed that he visited R. D. twice immediately after Whitfield DFCS took custody but admitted that he did not visit or contact the child from that time until the September 1999 hearing. He admitted that he paid no child support from April 1998 until September 1999. He also failed to work or maintain a home and was living in a homeless shelter during the month preceding his January 1999 incarceration. Such incarceration resulted from a probation revocation action which followed his September 1998 arrest for committing a felony, i.e., shoplifting a laptop computer. Notably, the father admitted during the hearing that, after his release from prison in December 1999, he would be sent to a diversion center for a few months, then would serve four more years under house arrest.

A Citizens Review Panel periodically reviewed the father's progress on the reunification plan and, in May 1999, recommended the termination of his parental rights due to his failure to complete the plan requirements. Whitfield DFCS filed the termination action on July 9, 1999. A guardian ad litem was appointed to represent R. D.'s interests and recommended termination of the father's rights.

A hearing was conducted on September 13, 1999, during which the trial court heard testimony from the father; C. B.; several Murray and Whitfield County DFCS employees; and R. D.'s Court Appointed Special Advocate ("CASA"). After considering the records of R. D.'s prior deprivation action, DFCS and CASA reports, and the hearing testimony, the trial court concluded that there was sufficient clear and convincing evidence to support the termination of the father's rights under OCGA § 15-11-81. The father appeals from the trial court's order. *Held*:

In three enumerations, the father claims that there was insufficient clear and convincing evidence to support the termination of his parental rights. We disagree.

> The standard of appellate review where a parent's rights to [his] child have been severed is whether, after reviewing the evidence in the light most favorable to the

---

under OCGA § 15-11-2 (8) (A). OCGA § 15-11-81 (b) (4) (A) (i); *In the Interest of T. B. R.*, 224 Ga. App. 470, 473 (1) (a) (480 SE2d 901) (1997); *In the Interest of R. N.*, 224 Ga. App. 202, 203 (480 SE2d 243) (1997).

appellee [DFCS], any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. The factfinding and weighing of evidence [are] to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met.

(Citations omitted.) *In the Interest of A. S. H.*, supra at 568. Under OCGA § 15-11-81 (a),

a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is clear and convincing evidence of parental misconduct or inability. A finding of parental misconduct or inability must rest on clear and convincing evidence showing: 1) that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A).

(Punctuation omitted.) *In the Interest of J. M. B.*, 231 Ga. App. 875, 876 (501 SE2d 259) (1998). See also *In the Interest of R. N.*, 224 Ga. App. 202, 203 (480 SE2d 243) (1997).

In determining whether the child is without proper parental care and control, the court shall consider, without being limited to, the following: (i) A medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child; (ii) Excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances . . . ; [or] (iii) Conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship.

OCGA § 15-11-81 (b) (4) (B) (i)-(iii). In addition, when the parent does not have custody of the child, the court may consider:

whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To

develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.

OCGA § 15-11-81 (b) (4) (C) (i)-(iii).

If the first prong is met, then the trial court must consider whether termination of parental rights is in the best interest of the child, after considering the child's "physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-81 (a)." *In the Interest of N. B.*, 239 Ga. App. 336, 337 (521 SE2d 47) (1999).

1. The father asserts that there was insufficient evidence of his parental misconduct or inability to justify termination under OCGA § 15-11-81. The trial court specifically found that the clear and convincing evidence of the father's repeated incarcerations; his unjustifiable failure to develop and maintain a meaningful, supportive relationship with the child; and his unjustifiable failure to pay child support was sufficient to establish the father's parental misconduct or inability. See OCGA § 15-11-81 (b) (4) (B) (iii), (C) (i), (ii).

Although the father claims that his incarceration prevented him from fulfilling the reunification plan requirements, such incarceration does not explain or excuse his failure to make any positive efforts toward such goals in the eight months preceding his incarceration. Further, he admitted that his incarceration did not prevent him from contacting R. D. through the mail but claims he was unable to do so because he did not have R. D.'s address. However, he never contacted Whitfield DFCS to get that information or to otherwise enlist their assistance in fulfilling his plan requirements. As such, we find no error in the trial court's finding of the father's present parental misconduct or inability.

2. In his second enumeration, the father contends that his April 1998 "mental collapse" was the primary cause of his inability to meet the program reunification goals. He claims that the State failed to demonstrate that his mental disability is likely to continue or will not be remedied and, therefore, that the trial court erred in terminating his parental rights. This assertion is without merit.

The father claims that he was fully capable of caring for R. D. prior to his "mental collapse."[3] He claims that he is now emotionally

---

[3] This Court notes, however, that such assertion is directly contradicted by the record. See Division 1, supra. The record demonstrated that R. D. was in foster care for years before the father was finally able to fulfill the Murray DFCS reunification plans in 1997. Then, almost as soon as he got custody of R. D., he committed a felony theft of two assault rifles.

stable, thanks to several prescription medications that he has been taking during his incarceration. According to the father, as long as he remains on this medication, he will be able to care for R. D. Therefore, the father relies on this Court's decision in *In the Interest of C. G.*, 235 Ga. App. 23 (508 SE2d 246) (1998), for the proposition that the termination must be reversed because the State failed to present any evidence that the alleged primary cause of R. D.'s deprivation, i.e., the father's mental illness, is likely to continue.

However, this case is distinguishable from *In the Interest of C. G.*, supra, wherein the trial court determined that a mother's mental disability rendered her incapable of caring for her child. Id. at 24. This Court found that the "crux of this case is the mother's mental condition and that the other factors [as to her parental inability] arose from that condition." Id. Since the State failed to present evidence that the condition was likely to continue, this Court ruled that there was insufficient clear and convincing evidence to support termination of her parental rights. Id. at 25.

In contrast, the trial court in this case specifically found clear and convincing evidence of the father's misconduct which had nothing, whatsoever, to do with his "mental collapse." These factors included his repeated felony convictions and resultant incarceration, as well as his unjustifiable failure to communicate with R. D. in a supportive parental manner, pay child support, or otherwise complete the reunification plan. See Division 1, supra; see also *In the Interest of C. W. D.*, 232 Ga. App. 200, 204 (1) (501 SE2d 232) (1998) (evidence of past conduct may be used to demonstrate that deprivation is likely to continue); *In the Interest of T. B. R.*, 224 Ga. App. 470, 473 (1) (b) (480 SE2d 901) (1997).

Further, even assuming that the father continues to take his medication while incarcerated, his newfound mental stability is untested in the real world. Although he promised the trial court that, once he is released, he would pursue counseling, get a job, find and maintain a home, pay child support, and fulfill all of his other reunification requirements, such empty promises fly in the face of past and present facts. This is particularly true when the father admits that he will be confined to house arrest for four years once he is finally released from the diversion center.

In fact, there is *no* evidence to indicate that the father is likely to be successful in fulfilling his ambitious — but unrealistic — promises. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation

---

The father also had at least two failed attempts at drug treatment prior to his suicide attempt.

and punctuation omitted.) *In the Interest of R. N.*, supra at 205 (2). This Court is unwilling to gamble R. D.'s safety and well-being on the mere possibility that the father will be able and willing to care for the child at some point in the future, when the overwhelming evidence suggests otherwise. *In the Interest of C. W. D.*, supra at 204 (1); *In the Interest of T. B. R.*, supra at 476-477.

Based on the record before us, this Court affirms the trial court's finding that there was clear and convincing evidence that R. D.'s deprivation, caused by the father's parental misconduct or inability, is likely to continue or will not be remedied. See OCGA § 15-11-81 (b) (4) (A) (iii).

3. Finally, the father claims that termination is not in R. D.'s best interest. Again, we must disagree. "The same factors which show parental inability may also show that termination would be in the [child's] best interest. [Cits.]" (Punctuation omitted.) *In the Interest of A. S. H.*, supra at 571 (2). See also *In the Interest of E. C.*, 225 Ga. App. 12, 18 (482 SE2d 522) (1997). As noted above, the father committed a felony while he had custody of R. D. and attempted suicide in the child's presence. He also unjustifiably failed to communicate with or support the child for over a year.

Further, R. D. has been diagnosed with Attention Deficit Disorder, for which he takes the medication Ritalin. Hearing testimony showed that he was disruptive and "act[ed] out" when he came into DFCS custody in 1998. Even though R. D. has shown "remarkable progress" while in foster care, he still requires special considerations in school, a stable and structured home environment, and possibly additional counseling or other assistance in order to catch up with his peers.

After considering the entire record, this Court finds that there was sufficient clear and convincing evidence to support the trial court's conclusion that termination of the father's parental rights was in R. D.'s best interest.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MARCH 23, 2000.

*Jerry W. Moncus,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Sanders B. Deen,* for appellee.