A00A1245. IN THE INTEREST OF S. T. et al., children.
(534 SE2d 813)

McMURRAY, Senior Appellate Judge.

C. W. T. appeals the termination of her parental rights to three of her biological children.[1] She argues the juvenile court erred in finding clear and convincing evidence that the cause of the children's deprivation was likely to continue and that the termination was in

---

[1] The juvenile court also terminated the parental rights of the children's putative fathers. They do not appeal.

the children's best interests. Our review of the record and the juvenile court's comprehensive order indicates otherwise. *Held*:

1. In considering a challenge to the sufficiency of the evidence supporting an order terminating parental rights, this Court is required to view the evidence in the light most favorable to the appellee, here the Chatham County Department of Family & Children Services ("DFACS"), and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost.[2] We do not weigh the evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.[3]

OCGA § 15-11-81 (a) sets out a two-part procedure for termination cases. First, the juvenile court must make a finding of parental misconduct or inability, which is proved by clear and convincing evidence that: (1) the children are deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children.[4] OCGA § 15-11-81 (b) (4) (A) (i)-(iv). If all four factors are met, the court must then decide whether the termination would be in the best interests of the children, considering their physical, mental, emotional, and moral condition and needs.[5] OCGA § 15-11-81 (a).

C. W. T. concedes that the evidence adduced at the termination hearing supports the juvenile court's findings under OCGA § 15-11-81 (b) (4) (A) (i), (ii), and (iv). Therefore, our inquiry is limited to determining whether the court correctly found that the children's deprivation is likely to continue.

A review of the record reveals that S. T. and K. T., then four and three years old respectively, were placed in the custody of DFACS in March 1998. DFACS removed the children from C. W. T. after an investigation revealed that S. T. and K. T. were neglected and that S. T. had been sexually abused. C. W. T. had no permanent home and was residing with friends. C. W. T., then pregnant with M. T., tested positive for marijuana use. M. T. was born in July 1998. In October, she voluntarily placed M. T. into foster care.

DFACS designed a reunification plan for C. W. T., and the case manager testified to the extensive efforts undertaken by DFACS to assist C. W. T. in reaching the plan's goals. The case manager also

---

[2] *In the Interest of A. C.*, 230 Ga. App. 395, 396 (1) (496 SE2d 752).
[3] *In the Interest of L. H.*, 236 Ga. App. 132, 133 (1) (511 SE2d 253).
[4] *In the Interest of A. N. M.*, 238 Ga. App. 21, 22 (1) (517 SE2d 548).
[5] *In the Interest of L. H.*, supra at 133.

testified that C. W. T. was aware of the steps she was required to accomplish in order to regain custody of her children, but she failed to complete them. Specifically, C. W. T. failed drug screens, failed to secure a stable home or stable employment, and failed to visit the children regularly. She stayed only five weeks in a Medicaid-covered six- to twelve-month residential "Baby Help" program designed to provide drug rehabilitation as well as family reunification services. She was referred to a therapist but refused to follow his recommendation of inpatient treatment.

On February 22, 1999, an order was issued declaring M. T. deprived and extending a previous deprivation order as to S. T. and K. T. On April 9, 1999, six months prior to the termination hearing, C. W. T. moved to Jacksonville, Florida. She returned to reside in Savannah three weeks before the hearing but never visited the children. According to her testimony, C. W. T. left Jacksonville because she fought violently with her roommate.[6] She did not testify that she returned to reunite with her children. Nor has C. W. T. provided financial support for the children since March 1998, save for one $50 payment to the foster mother.

Upon her return to Savannah, C. W. T. testified she was temporarily living with a friend and had no home for the children. Although she had previously resided in public housing, she testified she was currently ineligible to do so "because of the violence that went on at my residence" there. She claimed she was employed at a fast-food restaurant but failed to offer proof of same.

The juvenile court may consider a parent's past conduct in determining whether conditions of deprivation are likely to continue.[7] In the case sub judice, the evidence of past and present unfitness was clear, and C. W. T. could offer no concrete plan for housing or caring for her children in any manner. She failed to comply with the case plan DFACS drew up for her. Accordingly, there existed clear and convincing evidence from which the juvenile court could conclude that the deprivation was likely to continue.[8]

2. The second step under OCGA § 15-11-81 (a) requires the juvenile court to consider whether termination of parental rights is in the children's best interests. In making that determination,

> the court may consider the child[ren]'s need for a stable home environment and the detrimental effects of prolonged foster care. [Cit.] Children need permanence of home and

---

[6] The fight erupted after C. W. T. apparently opted to obtain a manicure and coiffure instead of paying her share of the telephone bill.

[7] *In the Interest of C. W. D.*, 232 Ga. App. 200, 204 (1) (501 SE2d 232).

[8] See *In the Interest of J. O. L.*, 235 Ga. App. 856, 858 (510 SE2d 613).

emotional stability or they are likely to suffer serious emotional problems. [Cit.] The court may also look at the same factors which show parental inability to care for the child[ren] to support a finding that termination of parental rights would be in the child[ren]'s best interest[s]. [Cit.][9]

As the juvenile court aptly stated in its thorough order:

Children need permanency and the security of a parent who will be present day in and day out. They do not need a parent who might be here one month and gone the next. Neither do they need the change of placement from a birth parent's home to foster care and back again and then removal into foster care . . . because the parent chooses to be absent.

C. W. T. voluntarily absented herself from her children, allowing them to languish in foster care. This fact, in addition to her current inability to provide a home for the children, provided sufficient clear and convincing evidence that termination was in their best interests. *Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MAY 18, 2000.

*Thomas J. Gustinella*, for appellant.
*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Duffy, Feemster & Lewis, John R. Strother III, Linda J. Carter*, for appellee.

