615 S.E.2d 551 (2005)
273 Ga. App. 468
IN THE INTEREST OF L.G. et al., children.
No. A05A0519.
Court of Appeals of Georgia.
May 27, 2005.
*552 James E. Watkins, Stockbridge, for Appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Crumbley & Crumbley, Jason T. Harper, for Appellee.
BERNES, Judge.
Appellant mother appeals from the March 31, 2004 order entered by the Juvenile Court of Henry County terminating her parental rights to her two minor children, L.G. and Y.G. Finding no error, we affirm.
Following the grant of a termination of parental rights ("TPR") petition, we review the evidence in the light most favorable to the Department of Family and Children Services ("DFCS"). In the Interest of H.D.M., 241 Ga.App. 805(1), 527 S.E.2d 633 (2000). So viewed, the record reflects that on February 7, 2002, DFCS removed L.G. and Y.G., along with their older siblings S.G. and T.A., from their maternal great-grandmother's home after making an unannounced visit. At the time of the removal, appellant was incarcerated in the Henry County jail. Appellant had left the four children in the *553 care of their elderly great-grandmother at the time of her arrest earlier that week.[1]
DFCS made the unannounced visit to the great-grandmother's home after learning that the oldest sibling, T.A., had missed at least 23 days of school and had come to school inappropriately dressed, hungry, and smelling of a foul odor. When the DFCS case manager entered the home, "she was [met] by this horrid stench that made her sick to her stomach." The home had no heat or running water and was suffering from extreme structural damage that was causing the floors to collapse. There was spoiled food in the kitchen area, and the remaining food in the refrigerator was freezer burned. Trash and food crumbs covered the floor in the children's bedroom. Their beds had no linens. L.G. and Y.G. were found in dirty diapers, soaking wet, with dried feces caked on them. L.G. had areas on her vagina where the skin had eroded. The oldest child, T.A., told the case manager that the children had not bathed in a long time, that their great-grandmother did not always cook food for them, and that the home was very cold on a routine basis. On February 14, 2002, DFCS filed a deprivation petition regarding the children. Appellant stipulated to the children's deprivation. The juvenile court found that the four children were deprived and placed them in the temporary custody of DFCS. Appellant did not appeal from that order.
After her initial incarceration in the Henry County jail in February 2002, appellant was transferred to the Spalding County jail on a charge of violating her probation. While incarcerated in Spalding County the DFCS case manager handling appellant's case visited appellant and discussed her case plan goals. Subsequently, in April 2002, appellant was released.
After her release from jail, appellant failed to meet many of her case plan goals. She did not successfully complete a parenting course as required by the plan, instead choosing to go to one class over a six-month period. Appellant claimed to be employed, but provided only one pay stub to the case manager as proof of employment, even though the plan required her to provide proof of income by the fifth of each month. Moreover, appellant failed to pay any support for the children while they were in DFCS custody. When the case manager requested that she take a drug screening, appellant cursed at her and refused to take the test. Appellant also routinely failed to visit the younger children on Saturdays and overall was attending only 50 percent of her scheduled visitations under the case plan.
In late August 2002, appellant was charged with forgery, robbery by sudden snatching, and giving a false name. She pled guilty to the latter two charges. Appellant was sentenced to two years imprisonment followed by three years probation.
After her reincarceration in August 2002, appellant had no more direct contact with L.G. and Y.G. Thus, no current, ongoing bond existed between appellant and her children. Moreover, appellant provided no indication to the case manager by mail or phone that she had further completed any of the goals of her case plan following her reincarceration.
On December 18, 2003, DFCS filed its petition to terminate the parental rights of appellant and any and all fathers of L.G. and Y.G. Following an evidentiary hearing, the juvenile court entered an order granting the petition and awarding permanent custody over the children to DFCS on March 31, 2004. Appellant now appeals from that order.[2]
1. Appellant first argues that the juvenile court erred by admitting and relying upon hearsay testimony of appellant's DFCS case manager during the TPR hearing. However, appellant has abandoned this claim of error because she failed to cite to any *554 portions of the record in support of her contention. Court of Appeals Rule 25(c)(3); Hudson v. State, 246 Ga.App. 335(1), 539 S.E.2d 860 (2000). Appellant also waived this claim by failing to object to any alleged hearsay testimony at the TPR hearing. In the Interest of H.D.M., 241 Ga.App. 805, 807-808(2), 527 S.E.2d 633 (2000).
2. Appellant next argues the evidence was insufficient to support the termination of her parental rights. In reviewing this claim of error, we ask whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) In the Interest of H.D.M., 241 Ga.App. at 805(1), 527 S.E.2d 633. "The reviewing court is to defer to the lower court in the area of factfinding.. . ." (Citation and punctuation omitted.) In the Interest of J.L.G., 191 Ga.App. 904, 905(1), 383 S.E.2d 376 (1989).
With these principles in mind, we turn to the two-step process juvenile courts must follow in determining whether parental rights should be terminated:
First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-[94](a). Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-[94](b)(4)(A)(i)-(iv). If the trial court finds that these four factors exist, then in the second step the court determines whether termination of parental rights is in the best interest of the child. In the Interest of D.A.P., 234 Ga.App. 257, 259(2), 506 S.E.2d 438 (1998).
In the Interest of H.D.M., 241 Ga.App. at 805(1), 527 S.E.2d 633.[3]
(a) The Child Must Be Deprived. Appellant did not appeal from the juvenile court's March 1, 2002 order on the deprivation petition finding that L.G. and Y.G. were deprived or from any of the subsequent deprivation and extension orders that included the same finding. She is therefore bound by the prior finding of deprivation made by the juvenile court. In the Interest of D.L.D., 248 Ga.App. 149, 153, 546 S.E.2d 11 (2001); In the Interest of H.D.M., 241 Ga.App. at 806(1), 527 S.E.2d 633.
(b) Lack of Proper Parental Care or Control Must Cause the Deprivation. In determining lack of proper parental care and control, the juvenile court was required to consider the factors listed in OCGA § 15-11-94(b)(4)(B), including whether there was excessive use of alcohol or controlled substances by the parent, and whether the parent had been convicted and imprisoned on felony charges, and the impact these factors had on the parent-child relationship. See OCGA § 15-11-94(b)(4)(B)(ii) and (iii). Additionally, because appellant has not had custody of L.G. and Y.G. since February 2002, the trial court was obligated to consider the factors listed in OCGA § 15-11-94(b)(4)(C).
When the child is not in the custody of the parent whose rights are at issue, OCGA § 15-11-[94] directs the trial court to consider whether the parent without justifiable cause failed significantly for a period of one year or longer (1) to communicate or make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner; (2) to provide for the care and support of the child; and (3) to comply with a court-ordered plan to reunite the child with the parent. OCGA § 15-11-[94](b)(4)(C).
In the Interest of H.D.M., 241 Ga.App. at 806(1), 527 S.E.2d 633.
A consideration of the evidence in light of these factors makes clear the juvenile court was warranted in concluding that appellant failed to exercise proper parental care and control, causing the deprivation of L.G. and Y.G. There was sufficient evidence that appellant *555 had a history of excessive use of alcohol and controlled substances rendering her incapable of providing adequately for L.G. and Y.G. OCGA § 15-11-94(b)(4)(B)(ii). Appellant admitted that she had prior convictions for possession of marijuana and driving under the influence (DUI). Her prior arrest for DUI occurred when she was pregnant with Y.G. Indeed, it was her substance abuse problem that led appellant to leave her children with their great-grandmother in that her arrest and incarceration in February 2002 resulted from possession of marijuana and DUI offenses. Appellant has never finished a drug treatment program, submitted to required drug screenings, or otherwise completed the case plan steps aimed at achieving her rehabilitation. The trial court was entitled to weigh this evidence in favor of a finding that appellant's lack of parental care and control caused the deprivation of L.G. and Y.G. In the Interest of H.D.M., 241 Ga.App. at 807(1), 527 S.E.2d 633; In the Interest of E.C., 225 Ga.App. 12, 15, 482 S.E.2d 522 (1997).
Similarly, there was sufficient evidence that appellant's felony convictions and repeated incarcerations have had a demonstrable negative impact on the parent-child relationship. OCGA § 15-11-94(b)(4)(B)(iii). The children were staying with their great-grandmother because appellant left them there shortly before her arrest and incarceration. Appellant's subsequent re-incarceration on felony charges only compounded the negative impact her behavior has had on her relationship with her children by preventing her from maintaining a bond with her children or from providing housing or financial support for them. Again, the trial court was authorized to weigh this evidence in favor of a finding of lack of proper parental care and control causing deprivation. See In the Interest of D.L.D., 248 Ga.App. at 153, 546 S.E.2d 11; In the Interest of J.K., 239 Ga.App. 142, 145(1), 520 S.E.2d 19 (1999).
Consideration of the factors listed in OCGA § 15-11-94(b)(4)(C) also supports the finding of the juvenile court. First, appellant has failed to communicate in a meaningful, supportive manner with her children since they were taken into custody in February 2002. OCGA § 15-11-94(b)(4)(c)(i). At the time of the TPR hearing, appellant had not seen her children for 18 months as a result of her reincarceration in August 2002. Moreover, prior to her reincarceration, appellant consistently failed to visit her younger children on one of her scheduled days and overall was attending no more than 50 percent of her scheduled visits with the children. Finally, while appellant testified that she had written to L.G. and Y.G. since her re-incarceration, she admitted that this communication had been insufficient to maintain a current bond with them, and that it would not surprise her if her youngest child walked into the courtroom and did not recognize her.
Second, there was sufficient evidence that appellant has not provided for the care and support of her children since the last time they were in her custody in February 2002. OCGA § 15-11-94(b)(4)(c)(ii). Appellant briefly worked at fast food restaurants after her release from jail in April 2002, but she provided only one pay stub to her DFCS case manager before she was reincarcerated. Appellant also has failed to pay any child support for her children. In the Interest of R.W., 248 Ga.App. 522, 526(2), 546 S.E.2d 882 (2001). Appellant did obtain housing after she was released from jail in April 2002 but lost her housing because she was unable to pay the rent. Indeed, it is undisputed that at the time of the TPR hearing, appellant remained imprisoned, unemployed, and homeless, hardly in a position to provide care and financial support to L.G. and Y.G.
Third and finally, there was sufficient evidence that appellant consistently has failed to comply with her case plan goals, as previously discussed.[4] OCGA § 15-11-94(b)(4)(C)(iii). *556 However, appellant contends that she has not complied with her case plan because DFCS failed to assist her after her reincarceration, such as by failing to provide the necessary referral for her psychological evaluation, failing to conduct the required drug screenings, and failing to arrange visits with her children.[5] But "Georgia law is well settled that [appellant] cannot object to the natural consequences brought about by [her] own voluntary commission of criminal acts." Turner v. Wright, 217 Ga.App. 368, 369(1), 457 S.E.2d 575 (1995). And, "[a]lthough [appellant] claims that [her] incarceration prevented [her] from fulfilling the reunification plan requirements, such incarceration does not explain or excuse [her] failure to make any positive efforts toward such goals in the. . . months preceding [her] incarceration." In the Interest of R.D., 243 Ga.App. 44, 47(1), 532 S.E.2d 146 (2000). Thus, appellant's contentions are unpersuasive.
(c) Cause of the Deprivation Must Be Likely To Continue. In determining whether the conditions of deprivation are likely to continue, the juvenile court may consider the past conduct of the parent.[6]In the Interest of S.T., 244 Ga.App. 86, 88(1), 534 S.E.2d 813 (2000); In the Interest of H.D.M., 241 Ga.App. at 807(1), 527 S.E.2d 633. "[T]he juvenile court is not required to reunite [the children] with appellant in order to obtain current evidence of deprivation or neglect." In the Interest of E.C., 225 Ga.App. at 16, 482 S.E.2d 522.
Accordingly, the juvenile court was entitled to consider appellant's current and previous incarcerations and weigh them in favor of a finding that the deprivation likely would continue. See In the Interest of A.L.S.S., 264 Ga.App. 318, 323(1), 590 S.E.2d 763 (2003); In the Interest of J.K., 239 Ga.App. at 145(1), 520 S.E.2d 19 (1999). Appellant's failure to achieve her case plan goals also weighed in favor of such a finding. See In the Interest of A.L.S.S., 264 Ga.App. at 323(1), 590 S.E.2d 763; In the Interest of B.C., 250 Ga.App. 152, 156(2), 550 S.E.2d 707 (2001); In the Interest of C.N.H., 238 Ga.App. 50, 53(1), 517 S.E.2d 589 (1999). Her record of unrehabilitated drug and alcohol-related problems further weighed in favor of likely continued deprivation. See In the Interest of D.L.D., 248 Ga.App. at 153, 546 S.E.2d 11; In the Interest of J.M.D., 221 Ga.App. 556, 558, 472 S.E.2d 123 (1996). Lastly, appellant's failure to regularly visit with L.G. and Y.G. and the resulting lack of a parent-child bond pointed toward continued deprivation. See In the Interest of A.T.H., 248 Ga.App. 570, 572-573(1), 547 S.E.2d 299 (2001).
In contrast, appellant emphasizes the positive steps she has taken during her incarceration that she believes demonstrate that she has now changed and that continued deprivation is unlikely. "[A]lthough appellant contends she has now changed, judging the credibility of her good intentions was a task for the juvenile court." In the Interest of R.S.H., 269 Ga.App. 292, 297(a), 603 S.E.2d 675 (2004). Almost all of appellant's efforts at reform were very recent and occurred after she had notice that DFCS was seeking to terminate her parental rights. The juvenile court was entitled to assign much less weight to such "assertions of sudden parental fitness" when compared to the other evidence presented during the TPR hearing. In the Interest of J.S., 232 Ga.App. at 880(1), 502 S.E.2d 788. See In the Interest of C.N.H., 238 Ga.App. at 53(1), 517 S.E.2d 589; In the Interest of R.S.H., 269 Ga.App. at 298(a), 603 *557 S.E.2d 675. Significantly, appellant already once before had an opportunity to make things different when she was released from jail in April 2002. Instead, she committed new crimes and was reincarcerated. As such, the trial court was entitled to view appellant's recent promises with skepticism. See In the Interest of D.L.D., 248 Ga.App. at 154, 546 S.E.2d 11.
(d) Continued Deprivation Must Be Likely To Cause the Children Serious Physical, Mental, Emotional, or Moral Harm. "The same evidence demonstrating that the children's deprivation is likely to continue also supports a finding that continued deprivation would cause serious physical, mental, or moral harm to the children."[7]In the Interest of R.S.H., 269 Ga.App. at 298(a), 603 S.E.2d 675. See also In the Interest of D.S., 247 Ga.App. 569, 573, 545 S.E.2d 1 (2001). However, we recently have cautioned against taking an "automatic[]" approach in this regard. In the Interest of J.T.W., 270 Ga.App. 26, 37(2)(d), 606 S.E.2d 59 (2004). There must be evidence in the record that goes beyond showing simply an "inability to parent [one's] children." In the Interest of A.T., 271 Ga.App. 470, 473, 610 S.E.2d 121 (2005). See also In the Interest of T.P., 270 Ga.App. 700, 706-707(4), 608 S.E.2d 43 (2004).
Such evidence exists in the present case. As already noted, appellant had not seen her children in the 18 months prior to the TPR hearing and routinely failed to visit her child before her re-incarceration. The case manager testified, and appellant admitted, that this lack of visitation has eviscerated her familial bond with L.G. and Y.G. L.G. and Y.G. had been in the same stable foster care placement since their removal in February 2002, and they have thrived there. The foster parents desired to adopt L.G. and Y.G., and the juvenile court's TPR order indicates that the two children were being placed in the custody of DFCS for purposes of adoption.
We have previously held that where evidence showed no parental bond between parent and child, the child had adapted well to foster care, and the foster parent wished to adopt, this was sufficient to support the juvenile court's conclusion that continued deprivation was likely to harm the child. In the Interest of J.K., 239 Ga.App. 142, 146(1), 520 S.E.2d 19 (1999); In the Interest of A.C., 230 Ga.App. 395, 398(1), 496 S.E.2d 752 (1998). Consistent with the foregoing authority, we find the juvenile court was authorized to conclude that clear and convincing evidence showed [L.G. and Y.G.] would likely suffer serious physical, mental, emotional, or moral harm from [their] continued deprivation.
In the Interest of C.A.W., 272 Ga.App. 4, 7, 611 S.E.2d 154 (2005).
(e) Termination Must Be in the Best Interests of the Children. The same testimony and documentary evidence that was presented at the TPR hearing and discussed above adequately supported the juvenile court's conclusion that the termination of appellant's parental rights would be in the best interests of L.G. and Y.G. In the Interest of K.N., 272 Ga.App. 45, 54(b), 611 S.E.2d 713 (2005); In the Interest of S.T., 244 Ga.App. at 89(2), 534 S.E.2d 813.
3. Appellant's final claim of error is that the juvenile court improperly awarded permanent custody of L.G. and Y.G. to DFCS without adequately considering placement with a relative. We review the juvenile court's decision that there were no appropriate relatives with whom to place L.G. and Y.G. for an abuse of discretion. In the Interest of A.L.S.S., 264 Ga.App. at 324(2), 590 S.E.2d 763. In light of the case manager's detailed testimony at the TPR hearing concerning the efforts made by DFCS to investigate multiple relatives for potential placement, and the failure by appellant or the putative father to timely provide the names and addresses of any additional relatives for consideration,[8] we cannot say *558 that the juvenile court abused its discretion. See id at 324-326(2), 590 S.E.2d 763.
Judgment affirmed.
BLACKBURN, P.J., and MILLER, J., concur.
NOTES
[1] DFCS was unable to identify or locate the putative fathers at the time of the removal. However, DFCS later located them, and the juvenile court returned legal custody of S.G. and T.A. to their father in a September 24, 2003 order. Appellant did not appeal from that order.
[2] The putative father of L.G. and Y.G. has not appealed.
[3] In the Interest of H.D.M. was decided under OCGA § 15-11-81(a), which was subsequently redesignated as the current OCGA § 15-11-94(a). See Ga. L.2000, p. 20, § 1.
[4] Although appellant testified that she did complete her case plan goal of taking parenting classes, she enrolled in the class only after DFCS sent her notice that it intended to seek the termination of her parental rights, and she did not complete the classes until a few days before the TPR hearing. Given her belated compliance after receiving notice that DFCS intended to have her parental rights terminated, the juvenile court was entitled to discount the fact that appellant had complied with this goal of the case plan. See In the Interest of J.S., 232 Ga.App. 876, 880(1), 502 S.E.2d 788 (1998). This is particularly true since appellant's case manager testified that she referred appellant to parenting classes before her reincarceration, but appellant only went to one of the classes and did not complete the program during that time.
[5] Appellant testified that DFCS prevented her children from visiting her during her incarceration even though there were prison programs in place that would have coordinated such visits, namely, the Children's Center program and Project Reach. However, appellant also testified that these programs required that she first enroll in parenting classes before they would provide her assistance in arranging visits, which she failed to do until three months before the TPR hearing. Under these circumstances, appellant cannot lay all the blame upon DFCS for the fact that L.G. and Y.G. have not been brought to visit her during her incarceration.
[6] Appellant asserts that the juvenile court failed to make a specific finding in its order that the deprivation of L.G. and Y.G. is likely to continue. Our review of the juvenile court's order indicates that the court made a specific finding on this issue.
[7] Contrary to appellant's assertion, the juvenile court made a specific finding that the children were likely to suffer serious harm if the deprivation were permitted to continue.
[8] The case manager testified that on the day of the TPR hearing, the putative father for the first time suggested to her that his parents be considered as a possible relative placement. Yet, by his own admission, the putative father failed to provide the case manager with any contact information that could be used to reach his parents.