A06A0372. IN THE INTEREST OF B. R., a child.
(627 SE2d 879)

ELLINGTON, Judge.

The mother of eight-year-old B. R. appeals from the order of the Laurens County Juvenile Court, which terminated her parental rights to her child. In three related claims of error, the mother contends the evidence was insufficient to authorize the court's order. Finding no error, we affirm.

> In considering a challenge to the sufficiency of the evidence supporting an order terminating parental rights, this Court is required to view the evidence in the light most favorable to the appellee, here the [Laurens County Department of Family and Children Services (the "Department")], and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. We do not weigh the evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.

(Footnotes omitted.) *In the Interest of S. T.*, 244 Ga. App. 86, 87 (1) (534 SE2d 813) (2000).

The record shows that the Department became involved with B. R. and her mother in March 2000, after receiving reports that her mother was mentally disabled, was unable to care for B. R. or herself, and was being financially exploited by a family member. The Department took the child into protective custody on September 5, 2000 and filed a deprivation petition on September 12, 2000. The Department alleged the mother had a composite score of 53 on the Stanford-Binet Intelligence Scale. In October 2000, the Department developed a reunification plan, which required the mother to attend counseling, to visit B. R. regularly, to provide a safe and stable home for herself and her child, to make independent decisions, and to cooperate with the Department. Following a December 2000 hearing, the court determined B. R. was deprived and placed B. R. in the temporary legal custody of the Department. The mother did not appeal the deprivation order. During 2001, both a citizen review panel and the juvenile court monitored the mother's efforts to comply with the

reunification plan, noting little improvement in her ability to provide for herself or to make independent decisions. On October 2, 2001, the juvenile court entered an order extending its previous deprivation order and continuing the Department's temporary custody of B. R. The court also entered a separate order directing the mother to submit to a psychological evaluation and to apply for housing in an independent living program that would accommodate B. R. The mother did not appeal those orders. After efforts between the parties to find a mutually satisfactory resolution to the situation failed, the juvenile court, on May 29, 2002, entered a consent order allowing the mother and B. R. to live together in an independent living facility, Hope House, as long as the mother abided by the facility's rules. The Department retained legal custody of B. R.

On June 27, 2002, the Department filed another deprivation action seeking to renew temporary legal custody. After a hearing, the juvenile court concluded that B. R. remained deprived given her mother's borderline intellectual functioning and inability to provide financial support and a safe home. Further, the mother had not completed her reunification plan. On August 22, 2003, the Department again petitioned to renew custody until the mother demonstrated that she had successfully completed Hope House's independent living program and had mastered the necessary skills for a life outside the facility. On September 11, 2003, the court entered a consent order that found B. R. deprived and that continued custody in the Department. The court noted that the mother had yet to complete the facility's program. The mother filed no appeal. On October 30, 2003, Hope House terminated the mother's participation in its program because she failed to abide by its rules. The Department, therefore, placed B. R. back into foster care.

On April 28, 2004, the Department filed a petition to terminate the mother's parental rights. On January 31, 2005, the court began an evidentiary hearing, which it continued for additional evidence on placement and custody issues on February 28, 2005 and April 15, 2005. The court heard testimony that the mother was unable to maintain steady employment, that she failed to finish educational course work, failed to attend mental health counseling, failed to complete her case plan, and failed to master the basic skills necessary for independent living. Although the mother demonstrated some ability to care for B. R., her caseworkers testified she could only adequately parent a child while under the supervision of others. Witnesses testified that the mother was easily led into exploitative living or working arrangements. A man briefly lived with the mother when she was in an apartment affiliated with Hope House, which was against the rules. She signed away her own disability benefits, gave

others grocery money that had been provided to her by the Department, and lived in places that were unsuitable for a child. She tested positive for marijuana use. And, although she loved her child, the mother's relationship with B. R. was described as on "more of a playmate level than it was a parent level." In the meantime, B. R. was doing well in foster care. Finally, although the transcript of the hearing does not specifically state[1] that the court took "judicial notice" of all the prior deprivation orders entered in the case, the court's final order does.

The mother contends the juvenile court erred in finding sufficient evidence to support the termination of her parental rights. We disagree and conclude that a rational trier of fact could have found by clear and convincing evidence that the mother's rights to B. R. should be terminated.

OCGA § 15-11-94 (a) sets forth a two-part procedure for termination cases. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in subsection (b) of the statute. Parental misconduct is found when: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, "[it] shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a). See *In the Interest of D. L. D.*, 248 Ga. App. 149, 152 (546 SE2d 11) (2001); *In the Interest of S. T.*, 244 Ga. App. at 87 (1).

Applying the four factors in OCGA § 15-11-94 (b) (4) (A) to this case, we find sufficient evidence to support the juvenile court's finding of parental misconduct or inability. First, the mother is bound by the juvenile court's prior deprivation orders, which were never appealed.[2] See *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (1) (529

---

[1] The judge mentioned a "housekeeping" matter on the record, noting that she had discussed with the parties "in chambers" the "numerous cases regarding [B. R.]" and needed to make sure there was no objection to any of the orders that had been signed by another judge, a judge who had had a conflict. While it is not entirely clear, the colloquy suggests that prior deprivation orders had been discussed with the parties and considered in chambers, off the record. Further, the judge who heard the termination case is the same judge who handled the prior deprivation matters.

[2] Although the record does not clearly reflect that the judge announced her intention to take judicial notice of prior orders on the record and gave the mother an opportunity to be heard as required, see *In the Interest of S. H. P.*, 243 Ga. App. 720, 722 (1) (a) (534 SE2d 161) (2000),

SE2d 141) (2000); *In the Interest of D. M. H.*, 242 Ga. App. 47, 48 (1) (528 SE2d 816) (2000). Moreover, the evidence summarized above warrants a finding of deprivation even in the absence of the unappealed orders. *In the Interest of J. W.*, 271 Ga. App. 518, 521 (610 SE2d 144) (2005). The mother was unable to provide a stable home for her child given her limited mental capacity and her history of being easily led and exploited by others.

The second factor requires a showing that the lack of proper parental care or control caused the deprivation. OCGA § 15-11-94 (b) (4) (A) (ii). Subsection (b) (4) (B) of the statute provides six conditions that the court may consider, including "(i) [a] medically verifiable deficiency of the parent's . . . mental . . . health of such duration or nature as to render the parent unable to provide adequately" for the needs of the child, and "[p]hysical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child." OCGA § 15-11-94 (b) (4) (B) (i), (v). The juvenile court properly found that both of these conditions existed in this case. The record demonstrates that the mother's borderline intellectual functioning severely restricted her ability to care for herself and B. R. She was unable to maintain a safe home, stable employment, and was so easily manipulated by others as to pose a risk to both herself and to B. R. The mother also showed little progress in completing the reunification plan, though she had almost four years to do so. She paid no child support. Because the evidence supports the juvenile court's finding that the mother was unable to master the basic skills required to parent a child, the court was authorized to find the deprivation was caused by the parental inability. OCGA § 15-11-94 (b) (4) (B) (i); *In the Interest of J. W.*, 271 Ga. App. at 521.

The juvenile court also properly found that the evidence satisfied the third factor, which is whether the cause of the child's deprivation is likely to continue. OCGA § 15-11-94 (b) (4) (A) (iii). It is well settled that courts may consider the past conduct of a parent in determining whether the deprivation is likely to continue. *In the Interest of D. S.*, 247 Ga. App. 569, 573 (545 SE2d 1) (2001). The record demonstrates that the mother made very little progress over the four years she had to complete the reunification plan. The mother's inability to change or improve was very likely to remain constant given her limited mental ability. Moreover, the same evidence demonstrating that B. R.'s deprivation is likely to continue also supports a finding that the continued deprivation would cause serious physical, mental, or

---

the court's failure to do so does not affect our holding because the evidence submitted during the hearing clearly and convincingly supports the court's independent findings on the issue of deprivation.

moral harm to the child. Id. Thus, the evidence also satisfies the fourth factor in determining parental misconduct or inability. OCGA § 15-11-94 (b) (4) (A) (iv).

Finally, having found clear and convincing evidence of parental misconduct or inability, the trial court properly determined that termination of the mother's parental rights was in B. R.'s best interest. OCGA § 15-11-94 (a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999). Further, the evidence showed that B. R. had been in and out of foster care for several years, that her foster parents desired to adopt her, and that she was doing well in their care. In determining that termination of parental rights would serve B. R.'s best interest, the court properly considered the need for stability in the child's life. *In the Interest of C. F.*, 251 Ga. App. 708, 714 (2) (555 SE2d 81) (2001). Given this evidence, there was clear and convincing evidence that termination of the mother's parental rights was in B. R.'s best interest. We find no error.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MARCH 1, 2006.

*Joseph C. Sumner, Lance G. Jones*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Charles C. Butler*, for appellee.