A05A0207. IN THE INTEREST OF D. D. et al., children.

(616 SE2d 179)

BARNES, Judge.

The mother of D. D. and J. R. appeals from the order of the juvenile court terminating her parental rights. In several enumerations of error, the mother contends that the trial court erred in terminating her parental rights. Upon review, we discern no error and affirm.

1. We note initially, that the mother has totally failed to comply with the rules of this court with regard to the structure and content of her appellate brief. Our rules require a statement of the proceedings below and of the material facts relevant to the appeal, including citations to the parts of the record or transcript essential to consider the enumerated errors, and, generally, "[i]n the absence of such reference, the Court will not search for or consider such enumeration." Court of Appeals Rule 25 (c) (3) (i).

Here, there is no statement of the proceedings below, no statement of facts, nor is there one specific reference to the record or transcript in the entirety of the brief. The brief does not contain any appreciable argument or substantive legal analysis; instead, each "argument" is comprised of a recitation of the enumerated error followed by a thread of legal citations allegedly supportive of this argument. Indeed, the brief has the sterile posture of a hastily prepared treatise on termination proceedings wherein, given the absence of any facts, the actors can be substituted at will.

We reiterate that,

> our appellate rules are designed to facilitate the consideration of enumerated errors, and that compliance with such rules is not optional. As discussed above, the brief in this case did not contain a statement of facts, which makes it difficult to determine what this case is even about, much less allow this Court to perform any meaningful analysis of the asserted errors.

*Hudson v. State*, 246 Ga. App. 335, 336 (4) (539 SE2d 860) (2000).

Nevertheless, given that the termination of parental rights is such a severe measure, and cognizant that the welfare of the children is to be considered above all else, "we will address appellant's enumerations of error based on what we perceive those arguments to be. [Cits.]" *In the Interest of C. W. S.*, 231 Ga. App. 444, 445 (1) (498 SE2d 813) (1998).

2. In reviewing a juvenile court's decision to terminate parental rights, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact

could have found by clear and convincing evidence that the natural parent's rights to custody should be terminated. *In the Interest of N. L.*, 260 Ga. App. 830 (581 SE2d 643) (2003). In so doing, we do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met. Id.

OCGA § 15-11-94 (a) sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." Id. Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-94 (b) (4) (A) (i)-(iv); *In the Interest of V. M. T.*, 243 Ga. App. 732, 735-736 (3) (534 SE2d 452) (2000). If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child. OCGA § 15-11-94 (a); *In the Interest of D. A. P.*, 234 Ga. App. 257, 259 (2) (506 SE2d 438) (1998).

Regarding the first factor, the mother did not appeal from the juvenile court's original deprivation order finding that D. D. and J. R. were deprived or from any of the subsequent deprivation and extension orders that included the same finding. She is therefore bound by the prior finding of deprivation made by the juvenile court. *In the Interest of D. L. D.*, 248 Ga. App. 149, 153 (546 SE2d 11) (2001). Moreover, the record shows that the children were removed from the mother's custody in June 2002 after it was reported that the two boys, then eleven months and two years old, were neglected and unsupervised. Upon investigation, it was determined that the mother had exposed the children to her drug use, and was not properly supervising the children. Thus, there was clear and convincing evidence that the children were deprived.

As to the second and third factors, that a lack of parental care or control caused the children's deprivation and that such cause of deprivation is likely to continue or unlikely to be remedied, the record contains clear and convincing evidence to support the findings on both criteria. Evidence of past conduct may properly be considered in determining whether the deprivation would likely continue. See *In the Interest of J. O. L.*, 235 Ga. App. 856, 858 (510 SE2d 613) (1998).

A July 22, 2002, case plan required the mother to obtain a substance abuse assessment and follow the recommendations, complete an alcohol and drug treatment program, submit to random drug screens, remain alcohol and drug free for six consecutive months, and

cooperate with child support enforcement. The first panel review was held on September 25, 2002 and the mother had only completed the psychological evaluation. The next panel review was held October 23, 2002, and although the mother had completed the drug and alcohol assessment, she did not complete the other goals, including remaining alcohol and drug free. She had also been arrested for selling cocaine, and a domestic violence report was filed against her by the police. The goal, nonetheless, was reunification if the mother demonstrated the ability to care for and supervise the children, and addressed her alcohol and drug dependency. By the third panel review, April 23, 2003, the mother still had not completed her remaining goals. There was also evidence that the mother continued using drugs while the children were in custody, had pled guilty to the sale of oxycodone,[1] and was in and out of jail repeatedly.

The juvenile court concluded that the mother had failed to address her drug dependency problem, as noted by her "incarceration and entering and removal from drug programs," and she was not able to consistently care for her children. It further found that she appeared addicted to cocaine and other illegal substances. We agree that the mother's past parental conduct, including her failure to obtain suitable housing, her inability to maintain stable employment, her continued failure to cooperate with DFACS, and her failure to seek or maintain counseling or drug abuse treatments constitute evidence from which a rational trier of fact could find present parental misconduct or inability and that such present misconduct or inability is likely to continue or unlikely to be remedied. See OCGA § 15-11-94 (b) (4) (B) (ii), (b) (4) (C). See also *In the Interest of D. N. M.*, 235 Ga. App. 712, 713 (510 SE2d 366) (1998).

As to the last factor, that continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children,

[t]he same circumstances that authorized the juvenile court's determination that these children were deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue further provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children.

---

[1] The mother's five-year sentence was probated on the condition that she complete the rehabilitation requirements set forth by the drug court; however, at the termination hearing, the mother admitted that she did not complete drug court.

*In the Interest of N. L.*, 260 Ga. App. 830, 835 (581 SE2d 643) (2003).

In this case, the evidence presented to the juvenile court supports a finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. The record supports the juvenile court's conclusion that both children have improved due to the stability they have experienced in foster care. Given that, as well as evidence of the mother's past failure to provide a safe home, incarceration, and failure to comply with most requirements of the reunification plan, the court was authorized to find that the children's continued deprivation would have a detrimental effect on them. *In the Interest of P. O. M.*, 255 Ga. App. 534, 536 (3) (566 SE2d 334) (2002). "The [juvenile] court was authorized to consider the [children's] need for a stable home situation. Children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Punctuation and footnote omitted.) Id. This evidence supports a finding that the children would suffer serious harm if returned to the mother. OCGA § 15-11-94 (b) (4) (A) (iv).

As for the second prong of the termination analysis, we are persuaded that the termination of the mother's rights is in the best interests of the children, considering the children's physical, mental, emotional and moral condition and their "need for a secure and stable home." OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of C. L. R.*, 232 Ga. App. 134, 138 (2) (501 SE2d 296) (1998).

3. The mother contends the juvenile court violated the mandate of OCGA § 15-11-103 (a) (1) by failing to search for a suitable family member for placement after deciding to terminate the mother's rights. However, the record shows that the relatives suggested by the mother and reported to the court were investigated, that one was not approved, and that two others failed to respond. The mother did not identify any other relatives for possible placement. Because the record demonstrates that the juvenile court thoroughly investigated the possibility of placing the children with relatives, we conclude that the juvenile court did not abuse its discretion by placing the children in the Department's permanent custody for the purpose of adoption. *In the Interest of D. T.*, 251 Ga. App. 839, 844-845 (2) (555 SE2d 215) (2001).

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 22, 2005.

*James J. Anagnostakis*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, T. Michael Flinn*, for appellee.