627 S.E.2d 857 (2006)
277 Ga. App. 794
In the Interest of K.A.P., a child.
No. A05A2332.
Court of Appeals of Georgia.
February 28, 2006.
*858 Michael S. Webb, Lawrenceville, Bentley C. Adams III, for appellant.
Rodney Q. Quarles, Chatsworth, TX, Philip F. Woodward, Dalton, for appellee.
RUFFIN, Chief Judge.
The natural mother of K.A.P. appeals from the juvenile court's order terminating her parental rights. She argues that insufficient evidence supports the termination order, that the juvenile court erred in denying her request for a continuance, and that the juvenile court improperly considered the results of a drug test conducted after the termination hearing. For reasons that follow, we affirm.
1. In reviewing an order terminating parental rights, "we view the evidence in a light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should *859 have been terminated."[1] So construed, the evidence shows that K.A.P.'s mother and father were never married. K.A.P.'s father lived with K.A.P. and his mother until K.A.P. was one year old, after which the couple separated. The father eventually married his current wife, Tina.
In August 2004, the Department of Family and Children Services removed K.A.P. from the mother's home because the mother was involved with drugs. On September 28, 2004, the juvenile court found six-year-old K.A.P. to be deprived and placed him in his father's custody. In the deprivation order, the juvenile court made numerous findings of fact, including that the mother threatened to kill K.A.P. and his siblings, held a knife to his three-year-old sibling, and had been diagnosed with amphetamine mood disorder and amphetamine dependence. The mother did not appeal the deprivation order or these findings.
Between September 2004 and March 2005, the mother did not contact the father or K.A.P. The mother called the father's house in March, but did not ask to speak to K.A.P. or request visitation. Although the deprivation order authorized supervised visitation between the mother and K.A.P., the mother never visited, attempted to visit, or wrote to her child. The father petitioned to terminate the mother's parental rights on April 8, 2005, and the juvenile court held a termination hearing on June 7, 2005.
At the time of the hearing, the mother had not paid any child support for K.A.P., had not been regularly employed since 1998 or 1999, admittedly had "no [job] qualifications," and had recently been convicted of first degree forgery. The mother testified that she lives rent-free with her mother and depends on her boyfriend for food.
The evidence further shows that the mother has used drugs since the age of 13. Although she denied threatening K.A.P. or his siblings, she admitted that on the day of the alleged threats, she was under the influence of drugs. Moreover, despite receiving a drug dependency assessment recommending that she attend weekly Narcotics Anonymous meetings, she had only attended three or four meetings that year. The mother conceded that she used illegal drugs "once or twice" after K.A.P. was removed from her home, but claimed that she had not taken drugs "in a while" and was "clean" on the day of the hearing. In its termination order, however, the juvenile court noted that "[i]t was obvious from her demeanor that the mother was under the influence" during the hearing. The juvenile court directed the mother to take a drug test immediately following the hearing. According to the termination order, the resulting drug screen was positive for amphetamine/methamphetamine.
The natural father and his wife, Tina, testified at the hearing in support of termination. Both reported that K.A.P. has responded well in their custody and, although initially "behind" in his studies, had progressed at school. They further testified that K.A.P. does not like to talk about his mother and shakes, "shies away," or lays his head down when she is mentioned. Tina also stated that she would like to adopt K.A.P.
The juvenile court terminated the mother's parental rights pursuant to OCGA § 15-11-94. The mother challenges this ruling on appeal, asserting that the evidence does not support termination. We disagree.
Termination proceedings involve a two-step inquiry.[2] First, the juvenile court must determine whether clear and convincing evidence establishes parental misconduct or inability.[3] Such misconduct or inability exists when: (a) the child is deprived; (b) lack of proper parental care or control caused the deprivation; (c) the deprivation will likely continue; and (d) continued deprivation "will cause or is likely to cause serious physical, mental, emotional or moral harm to the child."[4] Second, the court "must . . . determine whether termination is in the best interest *860 of the child, after considering the physical, mental, emotional, and moral condition and needs of the child . . ., including the need for a secure and stable home."[5]
(a) Deprivation. Because the mother did not appeal the juvenile court's September 28, 2004 order finding K.A.P. to be deprived based on the mother's drug use and threats to K.A.P. and his siblings, she is bound by this finding.[6]
(b) Lack of proper parental care and control. In determining whether a lack of proper parental care and control caused the deprivation, a juvenile court shall consider, among other things: (1) a medically verifiable deficiency in the parent's mental health that renders the parent unable to provide adequately for the child's physical, mental, emotional, or moral condition and needs; (2) a history of chronic unrehabilitated drug abuse that leaves the parent incapable of providing for the child; and (3) evidence that the parent engaged in egregious physically or emotionally abusive conduct toward the child or another child.[7]
Clear and convincing evidence supports the juvenile court's conclusion that the mother engaged in continued and unrehabilitated drug abuse. The 25-year-old mother has used drugs since she was 13 and has been diagnosed with amphetamine mood disorder and dependence. She failed to attend many of the Narcotics Anonymous meetings recommended by her drug treatment assessment and used drugs following K.A.P.'s removal from the home. And although the mother claimed that she was "clean" at the time of the termination hearing, a drug screen performed immediately after the hearing was positive for amphetamine/methamphetamine.[8] Moreover, the juvenile court was authorized to find that the mother had physically threatened K.A.P. and his siblings while under the influence of drugs. Such evidence supports a finding that K.A.P.'s deprivation resulted from a lack of proper parental care and control.[9]
We note that, as evidence of a lack of proper parental care and control, the juvenile court also cited the mother's failure to maintain a bond with and pay child support for K.A.P. following his removal from her home in August 2004. Under OCGA § 15-11-94(b)(4)(C), such factors only establish a lack of care and control if they continue for a year or more prior to the filing of the termination petition, a requirement not met in this case. Even if inappropriate, however, the juvenile court's reliance on these factors does not require reversal. As discussed above sufficient other evidencesuch as the mother's unrehabilitated drug use and prior threats toward K.A.P. and her other childrendemonstrates that a lack of proper care and control caused K.A.P.'s deprivation.[10]
(c) The deprivation will likely continue. "In determining whether the [child's] deprivation is likely to continue, the court may consider the parent's past conduct."[11] As discussed above, the mother has a long history of drug use and has not followed treatment recommendations. Although she claims to have "self-help[ed] [her]self" in an *861 effort to stop the drug use, that effort clearly has not been successful, given the positive drug screen the day of the hearing. And, before K.A.P.'s removal, she threatened him and his siblings while under the influence of drugs. The evidence further shows that the mother has not been regularly employed for years, is physically capable of obtaining work but claims that she has no job qualifications, has not seen or contacted K.A.P. in months, and has provided no support for him since his removal from the home. Under these circumstances, clear and convincing evidence supports the juvenile court's conclusion that the deprivation will likely continue.[12]
(d) Continued deprivation will likely cause the child serious physical, mental, emotional, or moral harm. Again, the mother threatened K.A.P. while he was under her care and has not contacted him since he was removed from her custody. The record also shows that K.A.P. cowers and shies away when his mother is mentioned. He has responded well while living with his father and stepmother, and, although initially behind in his schoolwork, has progressed at school. Finally, the stepmother testified that she wishes to adopt K.A.P. Such evidence demonstrates that continued deprivation likely will cause K.A.P. serious physical, mental, emotional, or moral harm.[13]
(e) Best interest of the child. We also agree with the juvenile court that clear and convincing evidenceespecially that discussed in Division 1(d)establishes that termination is in the best interest of the child. In particular, K.A.P. exhibits fear and anxiety when his mother's name is mentioned, has responded well in his new environment, and will likely be adopted by his stepmother.[14] Accordingly, we find no merit in the mother's challenge to the sufficiency of the evidence supporting termination.
2. The mother also claims that the juvenile court erred in refusing to grant a continuance. On April 26, 2005, the juvenile court continued a scheduled hearing on several motionssuch as the father's motion to hold the mother in contempt for failure to pay child supportso that the mother could hire counsel. The order granting the continuance specifically stated that the motions, as well as the father's petition for termination of the mother's rights, would be heard on June 7, 2005.
On June 7, the mother appeared with counsel for the termination hearing. At that point, the mother's counsel moved for a continuance, asserting that he had been retained the previous afternoon and had not had an opportunity to prepare. The juvenile court denied the motion, finding that the mother had not been diligent in obtaining counsel.
We will not disturb a juvenile court's denial of a motion for continuance absent abuse of discretion.[15] The record shows that the mother had almost six weeks to retain counsel before the scheduled termination hearing, but chose to wait until the day before the hearing to secure representation. She has offered no explanation for this lack of diligence, instead candidly admitting on appeal that she "was to blame." Under these circumstances, the juvenile court did not abuse its discretion in refusing to continue the hearing.[16]
3. Finally, the mother claims that the juvenile court erred in ordering her to submit to a drug test following the termination hearing and in considering the results of that test in its ruling. According to the mother, the juvenile court's order denied her the opportunity to challenge the admissibility and reliability of the test. The record shows, *862 however, that the mother did not object to the juvenile court's procedure. She voiced no objection when the juvenile court asked her to submit to the drug screen, and it is clear that she, in fact, participated in the test. Moreover, the juvenile court specifically stated that the test results would be forwarded to the court, putting the mother on notice that those results might factor into its ruling.
We find that the mother has waived this issue for purposes of appeal. She took part in the juvenile court's testing procedure without objection, giving the juvenile court no opportunity to rule on her claim that the procedure was improper. Accordingly, the mother cannot now complain about this ruling.[17]
Judgment affirmed.
JOHNSON, P.J., and BARNES, J., concur.
NOTES
[1] (Punctuation omitted.) In the Interest of K.N.C., 264 Ga.App. 475, 475-476, 590 S.E.2d 792 (2003).
[2] See id. at 481(4), 590 S.E.2d 792.
[3] See id.
[4] (Punctuation omitted.) Id.; see also OCGA § 15-11-94(b)(4)(A).
[5] (Punctuation omitted.) In the Interest of K.N.C., supra.
[6] See In the Interest of H.D.T., 273 Ga.App. 863, 866(a), 616 S.E.2d 196 (2005).
[7] See OCGA § 15-11-94(b)(4)(B).
[8] The results of the drug screen do not appear in the record. The mother does not dispute, however, that the drug screen was, in fact, positive for drugs. Furthermore, she has made no effort to include the results of the drug test in the appellate record. "In the absence of the relevant information, and there being a presumption in favor of the regularity of court proceedings, it must be assumed that the [juvenile] court's findings are supported by sufficient competent evidence." Kirkendall v. Decker, 271 Ga. 189, 191, 516 S.E.2d 73 (1999).
[9] See In the Interest of H.D.T., supra at 866(b), 616 S.E.2d 196; In the Interest of D.D., 273 Ga.App. 839, 840-841(2), 616 S.E.2d 179 (2005); In the Interest of L.G., 273 Ga.App. 468, 472(2)(b), 615 S.E.2d 551 (2005).
[10] See In the Interest of A.M.B., 219 Ga.App. 133, 135-136, 464 S.E.2d 253 (1995); see also In the Interest of B.S., 265 Ga.App. 795, 797, n. 9, 595 S.E.2d 607 (2004) ("Separation for a year is not an automatic requirement prior to a termination.").
[11] In the Interest of H.D.T., supra at 867(c), 616 S.E.2d 196.
[12] See id.; In the Interest of D.D., supra; In the Interest of L.G., supra at 474-475(2)(c), 615 S.E.2d 551.
[13] See In the Interest of D.D., supra at 842, 616 S.E.2d 179; In the Interest of L.G., supra at 475(2)(d), 615 S.E.2d 551.
[14] See In the Interest of D.D., supra; In the Interest of L.G., supra at 476(2)(e), 615 S.E.2d 551.
[15] See In re K.H., 179 Ga.App. 4, 8(1), 345 S.E.2d 108 (1986).
[16] See id.; see also Choat v. State, 246 Ga.App. 475, 476(1), 540 S.E.2d 289 (2000) ("`The party requesting the continuance must show that he exercised due diligence.'").
[17] See Lovelace v. State, 269 Ga.App. 272, 273(2), 603 S.E.2d 784 (2004); Mayo v. State, 261 Ga.App. 314, 316(2), 582 S.E.2d 482 (2003); Bixby v. State, 254 Ga.App. 212, 212-213(1), 561 S.E.2d 870 (2002).