A06A1898. IN THE INTEREST OF R. D. B., a child.

(639 SE2d 565)

MIKELL, Judge.

R. D. B.'s mother appeals the order terminating her parental rights to the child, contending that the evidence was insufficient to show that the cause of the child's deprivation is likely to continue, that continued deprivation is likely to cause serious harm to the child, or that the Department had made reasonable reunification efforts. We affirm for the reasons set forth below.

> In considering a challenge to the sufficiency of the evidence supporting an order terminating parental rights, this Court is required to view the evidence in the light most favorable to the appellee, here the [Athens-Clarke] County Department of Family and Children Services (the "Department"), and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. We do not weigh the evidence or determine the credibility of the witnesses but defer to the trial court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.[1]

Properly viewed, the evidence shows that R. D. B. tested positive for cocaine at her birth on June 11, 2003. The juvenile court issued an order for shelter care the next day, and the Department took her into custody. Shortly thereafter, the Department filed a deprivation petition, asserting that appellant had no housing, admitted using marijuana shortly before the child was born, had four other children, none of whom were in her custody, and had outstanding warrants for her arrest. The record shows that appellant's parental rights to two of her children, A. F. and T. V. F., were subsequently terminated by order issued on July 23, 2004, nunc pro tunc to November 13, 2003.

Following the deprivation hearing as to R. D. B., the court issued an order noting that appellant had stipulated to the child being deprived because she was incarcerated and could not meet the child's needs. The court further found that the child had tested positive for cocaine at birth and that appellant had an untreated substance abuse addiction which rendered her unable to care for the child. The court adopted a reunification plan which required appellant to become and remain drug and alcohol free, meet her mental health needs, maintain a positive relationship with the child, cooperate with child

---

[1] (Citation and punctuation omitted.) *In the Interest of S. L. B.*, 265 Ga. App. 684 (595 SE2d 370) (2004).

support enforcement, obtain and maintain stable housing, maintain a legal income, attend parenting classes, and cooperate with the Department. In addition, the court ordered appellant to submit to random drug screens and ruled that the results of the screens had to be clean for six months before the child could be returned to appellant.

The Department filed a petition on June 4, 2004, to terminate appellant's parental rights to the child. At the hearing held on August 26, 2004, appellant, who was called for cross-examination, testified that she was serving a three-year prison sentence for shoplifting and did not have a release date; that she had been out of jail for one week, in September 2003; that she did not contact the Department during that week to arrange a visit with the child; that she attended drug and alcohol treatment classes in jail and wrote letters to her case managers; and that she had served a previous three-year sentence beginning in 1997 and was also incarcerated from 2001 until August 2002.

Audrey Brannen, the child's case manager from June through October 2003, testified that she prepared the reunification plan and that appellant stipulated to it at the dispositional hearing on August 8, 2003. Brannen further testified that she arranged for appellant to visit the child on September 25 but appellant did not show up and did not contact Brannen. Appellant did write her two letters from jail requesting pictures of the child, and Brannen sent them.

The second case manager, Allison Ayers, testified that appellant wrote her several letters requesting pictures of the child. Ayers mailed appellant pictures and visited her twice in jail. Ayers also testified, however, that appellant had failed to meet the goals of her case plan. Specifically, appellant did not complete a substance abuse evaluation, did not participate in any mental health counseling in prison, had not maintained a relationship with the child, and had not made any progress toward her goals of cooperating with child support enforcement, obtaining housing, or earning a legal income. According to Ayers, appellant was arrested for probation violation from the hospital when the child was born cocaine-positive, and when appellant was released in September, she was rearrested for shoplifting and reincarcerated.

Dr. Harvey L. Gayer, a psychologist who tested the child's father,[2] testified in response to a hypothetical question concerning appellant that a mother who has not seen her child since giving birth to her 14 months ago is a stranger to the child and that it would be difficult for them to establish a bond.

---

[2] The juvenile court terminated the father's parental rights as well, but he does not appeal.

Alicia Dunn Favors, the child's foster mother, testified that the child had been in her care virtually since birth and that Favors and her husband wished to adopt her. Favors also testified that the child exhibited no signs of drug dependence and was developing normally.

The guardian ad litem recommended termination of appellant's parental rights, based on the facts that she has no relationship with the child, has never provided for the child, and has been incarcerated since the child's birth. The guardian also concluded that the child would suffer if removed from the only parents she has ever known and would languish in foster care if the parents were permitted to continue on their present courses of action.

1. The termination of parental rights is a two-step procedure.[3] First, the juvenile court must find parental misconduct or inability, based on clear and convincing evidence that (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such causes are likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.[4] If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering her physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[5]

Appellant does not contest that the child is deprived or that lack of parental care has caused this deprivation. Nevertheless, we review the juvenile court's finding that appellant caused the deprivation, as it is essential to an understanding of the court's findings as to the remaining factors.

(a) *Lack of proper parental care caused the deprivation.* Here, the court found evidence of four of six statutory conditions which must be considered in determining whether lack of proper parental care caused the deprivation, namely: "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child";[6] "[e]xcessive use of or history of chronic unrehabilitated abuse of . . . narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the

---

[3] OCGA § 15-11-94 (a).

[4] OCGA § 15-11-94 (b) (4) (A) (i)-(iv). See *In the Interest of D. L. S.*, 271 Ga. App. 311, 313 (609 SE2d 666) (2005).

[5] OCGA § 15-11-94 (a). See *In the Interest of A. L. E.*, 248 Ga. App. 213, 216 (1) (546 SE2d 319) (2001).

[6] OCGA § 15-11-94 (b) (4) (B) (i).

child";[7] "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship";[8] and "[p]hysical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent."[9] The court incorporated findings of fact from its prior order terminating appellant's parental rights to two of her other children, including the fact that appellant had been incarcerated for multiple extended periods from June 19, 1991, through January 27, 2003, based on various criminal convictions.

Further, because the child was not in appellant's custody, the juvenile court was required to consider whether she unjustifiably failed to develop and maintain a parental bond with the child in a meaningful, supportive manner[10] or to comply with a court-ordered reunification plan.[11] The court found that appellant had never bonded with the child and had not completed any of the goals of her court-ordered reunification plan. These findings are supported by the testimony of the child's case workers that appellant missed the only opportunity she had to visit with the child and had made little progress on her case plan.

(b) *Likelihood of continued deprivation.* Appellant challenges the sufficiency of the evidence to support the juvenile court's finding that the causes of the child's deprivation are likely to continue. "It is well settled that courts may consider the past conduct of a parent in determining whether the deprivation is likely to continue."[12] As noted above, appellant has been incarcerated for virtually all of this child's life, as well as for multiple periods of time from June 19, 1991, through January 27, 2003. The juvenile court was authorized to consider and rely upon evidence of appellant's extensive criminal history and the resulting incarcerations, which also resulted in the termination of her parental rights to two of her other children. "Although imprisonment alone does not always compel a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist."[13] One such aggravating circumstance is a "history of repetitive incarcerations for the

---

[7] OCGA § 15-11-94 (b) (4) (B) (ii). See *In the Interest of K. A. P.*, 277 Ga. App. 794, 796-797 (1) (b) (627 SE2d 857) (2006).

[8] OCGA § 15-11-94 (b) (4) (B) (iii). See *In the Interest of T. A. M.*, 280 Ga. App. 494, 497 (2) (634 SE2d 456) (2006).

[9] OCGA § 15-11-94 (b) (4) (B) (v).

[10] OCGA § 15-11-94 (b) (4) (C) (i).

[11] OCGA § 15-11-94 (b) (4) (C) (iii).

[12] (Citations omitted.) *In the Interest of S. L. B.*, supra at 688 (1).

[13] (Citations and punctuation omitted.) *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992).

commission of criminal offenses or parole violations."[14] "A criminal conviction, along with near continuous incarceration during the child's life, and the failure to comply with reunification case plans while incarcerated provides ample grounds for the termination of parental rights."[15] Although appellant argues that her continued contact with the Department showed concern for the welfare of her child, "judging the credibility of her good intentions was a task for the juvenile court."[16] The evidence supports the juvenile court's finding by clear and convincing evidence that the causes of the child's deprivation are likely to continue.

(c) *Continued deprivation is likely to cause serious harm to the child.*

> As to the fourth factor, that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child, the same circumstances that authorized the juvenile court's determination that the child was deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue further provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[17]

Further, the court is "authorized to consider the adverse effects of prolonged foster care in determining that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm [to the child]."[18] Here, the juvenile court, in its well-reasoned order, properly considered the child's need for stability and the effects of foster care drift:

> The policy of the law as outlined in its statutes addressing children and foster care is to eliminate foster care drift and

---

[14] Id. Accord *In the Interest of T. L. H.*, 240 Ga. App. 201, 203 (523 SE2d 50) (1999) ("When an incarcerated parent has a criminal history of repetitive incarcerations for the commission of criminal offenses, this constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue") (citation and emphasis omitted). See also *In the Interest of T. A. M.*, supra at 504 (8) (c).

[15] (Citation and punctuation omitted.) *In the Interest of T. G. Y.*, 279 Ga. App. 449, 452 (1) (631 SE2d 467) (2006).

[16] (Citation omitted.) *In the Interest of R. S. H.*, 269 Ga. App. 292, 297 (a) (603 SE2d 675) (2004).

[17] *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 614 (2) (d) (629 SE2d 822) (2006).

[18] (Footnote omitted.) *In the Interest of A. K.*, 272 Ga. App. 429, 438 (1) (d) (612 SE2d 581) (2005).

promote stability and permanence for children whose parents are unable or unwilling to provide for them. To allow this child to continue in foster care awaiting the possibility that one day her parents may be fit and she would then be wrenched from the care and concern of responsible foster parents . . . would be a cruel response to this child's need and expectation of having from society a home environment free of abuse and neglect regardless of her status at birth. To await the parents['] possible fitness and leave this child with such an unstable future is likely to cause serious physical, mental, emotional, or moral harm to her.

Moreover, "[e]vidence of a lack of parental bond between the natural parent and child, that the child has adapted well to foster care, and that the foster parents wish to adopt will together support the juvenile court's conclusion that continued deprivation is likely to harm the child."[19] Here, the testimony of the foster mother that she and her husband, who have cared for the child since she was a few days old, wish to adopt her, coupled with evidence of a complete lack of bond between appellant and the child, support the juvenile court's determination that continued deprivation would seriously harm her.

2. *Best interest of the child.* The same factors that show parental misconduct or inability may also support a finding that termination is in the child's best interest.[20] Further, given the mother's history of incarcerations, substance abuse, and inability to care for any of her six children, as well as the bond the child has developed with her foster family and their desire to adopt her, the juvenile court did not abuse its discretion in finding that termination of appellant's parental rights served the child's best interest.[21]

3. Finally, appellant contends that the evidence was insufficient to show that the Department had made reasonable reunification efforts pursuant to OCGA § 15-11-58 (a) (2).

OCGA § 15-11-58 (a) provides that the juvenile court shall determine as a finding of fact whether reasonable efforts were made by [the Department] and any other appropriate agencies to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from that child's home, and to make it possible for the child to return safely to the child's

---

[19] (Citations omitted.) *In the Interest of J. W. M.*, 273 Ga. App. 20, 23 (1) (d) (614 SE2d 163) (2005).

[20] See *In the Interest of A. R. A. S.*, supra at 615 (2).

[21] *In the Interest of H. E. M. O.*, 281 Ga. App. 281, 288 (2) (636 SE2d 47) (2006).

home. However, OCGA § 15-11-58 does not impose upon termination proceedings the same procedures that apply to disposition orders and recommendations regarding reunification. We do note that such a finding of fact is required in relation to deprivation orders, but the mother did not appeal the juvenile court's findings of deprivation.[22]

As appellant did not challenge the deprivation order, this enumeration of error is meritless.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 29, 2006.

*Lisa Lott*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Assistant Attorney General, Rachele C. Gibson*, for appellee.

---

[22] (Punctuation and footnotes omitted.) *In the Interest of F. C.*, 248 Ga. App. 675, 679 (2) (549 SE2d 125) (2001).