663 S.E.2d 793 (2008)
In the Interest of J.S., a child.
No. A08A0269.
Court of Appeals of Georgia.
June 19, 2008.
*794 T. Rabb Wilkerson III, Warner Robins, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, Williams, Sammons & Sammons, Walter G. Sammons, Jr., Warner Robins, for appellee.
BARNES, Chief Judge.
The mother of J.S. appeals the termination of her parental rights contending that *795 the termination was not supported by clear and convincing evidence. Upon our review and for the reasons set forth below, we affirm.
Termination of parental rights under OCGA § 15-11-94 requires the juvenile court to undertake a two-step process. First, the court must determine whether there is clear and convincing evidence of parental misconduct or inability as provided in OCGA § 15-11-94(b). Under that Code section, parental misconduct or inability may be found when (1) a child is deprived; (2) the cause of the deprivation is lack of proper parental care or control; (3) such deprivation is likely to continue or not likely to be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If there is clear and convincing evidence of parental misconduct or inability, OCGA § 15-11-94(a) then requires the court to consider whether terminating the parent's rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home.
(Footnote omitted.) In the Interest of H.D.T., 273 Ga.App. 863, 616 S.E.2d 196 (2005). On appeal, we must determine
whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citations and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
So viewed, the record[1] demonstrates that when J.S. was born on November 18, 2004 he tested positive for cocaine, and he was subsequently placed in foster care. The maternal grandmother refused to take custody of J.S. when he was born because of the potential health issues he might have due to the cocaine in his system. No other family placement was identified at that time. Under the reunification plan developed for the mother she was required to, among other things, obtain a substance abuse assessment and follow the recommendations, successfully complete a drug/alcohol program, submit to random drug screenings, attend parenting classes, obtain and maintain a source of income and adequate housing, and cooperate with the Department of Family and Children Services ("DFACS").
The mother completed the drug abuse assessment and psychological evaluation, and started but did not complete parenting classes. Although at the time of the termination hearing she was a resident at a drug treatment facility, she had not undergone any drug treatment before then. Her court-ordered visitation was for hourly visits twice a month, yet the mother only visited J.S. twice after he was taken into DFACS custody, once in February 2005 and one year later in February 2006. The mother provided no financial support for J.S., and did not maintain contact with DFACS during much of J.S.'s placement. In October 2005, the citizens review panel noted that there was "no contact with mother or father. DFACS sent letters but no reply." Further, because the mother could not be located, there was no information regarding stable housing for J.S. or a steady income for the mother.
In October 2005, DFACS filed a petition to extend custody of J.S. and to approve a permanency case plan. The Department also petitioned to terminate the mother's parental rights for abandonment. In February 2006, nunc pro tunc to October 2005, the juvenile court extended DFACS's custody of J.S., approved the permanency plan, and continued the termination hearing which was scheduled for January 18, 2006 because the mother and putative father could not be located for service. While J.S.'s case was pending, in February 2006 the mother gave birth to twin boys who were also born with cocaine in their *796 systems. The juvenile court entered a 72-hour order finding the newborns deprived. On February 15, DFACS filed a deprivation petition, and one week later filed a motion to terminate the mother's parental rights of the twins, which the juvenile court consolidated with J.S.'s pending case.
At the time of the termination hearing, the mother had been enrolled for two months at a six-month inpatient rehabilitation facility that helps addicted mothers reunite with their children. Her case manager testified that the program allows children to live at the facility with their mothers, and that the mother could have J.S. and the twins with her because the program would "be assisting her." She further testified that the mother was in the first phase of the program and that there are two other phases of the program. The caseworker testified that the mother was willing to work on her sobriety when she entered the program because "she figured the only way she could get her kids back is she had to so the right thing, take care of herself first before she as able to take care of her kids."
Following the hearing, the trial court terminated the mother's parental rights to J.S., but after finding that the twins were deprived did not terminate the mother's rights to the newborns. In the order terminating the mother's parental rights, the juvenile court noted that the mother "began making an effort to conquer her drug addiction almost immediately after [the twins] were born.... These children are infants and have not bonded with a foster family." Regarding J.S., the court found that
[t]he mother paid no money toward the support and maintenance of the child for a period of more than one year immediately preceding the filing of the petition. From January 2005 to February 2006 the mother did not see the child. The mother has a drug addiction that significantly interferes with her ability to meet the needs of the child. The child is young and has been with foster parents who want to adopt him for more than one year.
The mother contends that the evidence fails to meet the clear and convincing standard required before a court may terminate parental rights. We disagree.
The mother is bound by the juvenile court's deprivation order since she did not appeal that order. See In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001). This satisfies the first factor for finding parental misconduct or inability under OCGA § 15-11-94(b)(4)(A)(i). The evidence also satisfies the second factor that the parent was the cause of the deprivation. See OCGA § 15-11-94(b)(4)(A)(ii). The evidence shows that J.S. was born addicted to cocaine and was deprived as a result of his mother's drug addiction and abandonment.
The evidence also supports the court's finding that the cause of the deprivation is likely to continue given the mother's history of abandoning J.S. for the year before the termination hearing, providing no financial support for J.S., relinquishing the care of another child to her grandmother,[2] continuing to use drugs after J.S. was removed from her care, and using drugs while pregnant with J.S. and the twins. This evidence satisfies the third factor that the cause of the deprivation likely to continue. See OCGA § 15-11-94(b)(4)(A)(iii). Moreover, the mother failed to develop a bond with J.S. from the time of his birth until the termination hearing. As we have held, evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to the parent. See In the Interest of A.A., 252 Ga.App. 167, 172(2)(c), 555 S.E.2d 827 (2001).
The evidence also shows that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to J.S. OCGA § 15-11-94(b)(4)(A)(iv). Here, the same facts that support the juvenile court's determinations that J.S. was deprived by lack of proper parental care or control and that the deprivation was likely to continue if the child were placed with his mother also support a determination that continued deprivation would likely cause him serious harm. In the Interest of K.A.S., 279 Ga.App. 643, 651(1)(d), 632 S.E.2d 433 (2006). Moreover, it is well established that "children need permanence of home and emotional stability *797 or they are likely to suffer serious emotional problems." (Footnote omitted.) In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003). The juvenile court is authorized to consider the adverse effects of prolonged foster care in determining whether continued deprivation is likely to cause the child serious physical, mental, emotional, or moral harm. In the Interest of R.D.B., 282 Ga.App. 628, 632(1)(c), 639 S.E.2d 565 (2006).
Here, after being removed from his mother at birth, J.S. had been living with his foster parents for most of his life and has an established bond with them and has no parental bond with his mother. The foster parents are also interested in adopting the child. Though the mother is making progress at her present rehabilitation facility, she is not in a position to independently care for J.S.
As for the second prong of the termination analysis, we are persuaded that the evidence shows that termination of the mother's parental rights is in the best interest of J.S., considering his physical, mental, emotional, and moral condition and "need for a secure and stable home." OCGA § 15-11-94(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) In the Interest of A.C., 272 Ga.App. 165, 168(2), 611 S.E.2d 766 (2005).
While the mother is to be commended for the positive strides she has made toward rehabilitation, "[u]ltimately, the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Citation and punctuation omitted.) In the Interest of R.N.H., 286 Ga.App. 737, 742(1)(c), 650 S.E.2d 397 (2007). Accordingly, the trial court did not err in determining that termination of the mother's parental rights was supported by clear and convincing evidence.
Judgment affirmed.
JOHNSON, P.J., and PHIPPS, J., concur.
NOTES
[1] The juvenile court took judicial notice of the previous evidence received by the court and orders entered regarding J.S. See In the Interest of S.H.P., 243 Ga.App. 720, 722(1)(a), 534 S.E.2d 161 (2000).
[2] The mother testified that she has a fourth child who is being cared for by a grandmother.